UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO. 3:19-00239-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| REGINALD WILLIAMS | MAG. JUDGE KAREN L. HAYES |

**MEMORANDUM ORDER**

Pending before the Court is a Letter/Motion filed by Defendant Reginald Williams ("Williams") requesting uncertain relief in connection with generalized concerns related to the COVID-19 pandemic [Doc. No. 16]. The United States has filed a response. [Doc. No. 19].

Williams was on supervised release as part of a sentence imposed on April 8, 2015, for Possession with Intent to Distribute Methamphetamine. After testing positive for cocaine four times while on supervision, along with other various violations, the United States Probation Office sought to revoke Williams' supervised release. [Doc. No. 4]. Williams' supervised release was revoked on March 9, 2020, and he was sentenced to 12 months and one day imprisonment [Rec. Doc. 15].

In his letter, Williams states he is still waiting to be designated to a BOP facility and remains incarcerated at Ouachita Correctional Center (OCC). He raises concerns about halfway house time and home confinement, concerns that he was being housed with other inmates in a pod that was under quarantine, concerns about his life and health, concerns over not being given a mask to wear, and concerns related to a lack of access to phones or news on television. He ends the letter

1

by asking for "help with my current situation" but does not specify exactly what relief he is seeking. The letter doesn't mention or ask for release or a reduction in sentence.

Given the issues raised and the known threat from the Covid-19 pandemic, the Court ordered the United States to file a response no later than June 4, 2020. [Doc. No. 18]. The United States complied with that directive and filed its opposition [Doc. No. 19] on June 1, 2020.

The United States asserts that any relief Williams may be requesting is not cognizable under a motion pursuant to 18 U.S.C. § 3582(c)(1)(A). Alternatively, the Government asserts that, to the extent Williams' letter may be construed as a request for compassionate release, his generalized fear of COVID-19 does not warrant compassionate release. Finally, to the extent Williams' letter may be construed as a request for home confinement under Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. Law 116-136, enacted on March 27, 2020, the Government contends the Court is without jurisdiction to grant such a request.

*Williams' general request for "help"*

To the extent Williams' letter requests "help" by seeking that the Court order a change of which pod he is assigned to, or that he be given access to masks, phone calls, or television while at OCC, those requests relate to the conditions of his confinement, not a modification of a sentence of imprisonment. Those requests are outside the scope of relief potentially available under 18 U.S.C. §3582(c)(1)(A) and are not cognizable under this motion. *See Schipke v. Van Buren*, 239 F. App'x 85, 85-86 (5th Cir. 2007) (noting that Schipke's claims, which included complaints regarding the medical treatment she was receiving in federal custody and her conditions of confinement, should have been raised in a *Bivens* action, subject to the requirement that she exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)).

Therefore, this claim has no merit.

*Request for compassionate release*

Williams' letter could be interpreted as making a request for compassionate relief. "[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 825 (2010). Consistent with that principle of finality, 18 U.S.C. § 3582(c) provides that a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), such as that presented by the defendant; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," 18 U.S.C. § 3582(c)(1)(B); and (3) where the defendant was sentenced based on a retroactively lowered sentencing range, 18 U.S.C. § 3582(c)(2).

Relevant here, under § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling circumstances," consistent with guideline policy statements. Under the statute as amended by the First Step Act, the Court may act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

In this case, because Williams is incarcerated in a state facility rather than a BOP facility, the Government concedes Williams is deemed to have exhausted administrative remedies for purposes of making a request for compassionate release, such that the Court has jurisdiction consider his motion. 18 U.S.C. § 3582(c)(1)(A).

The Court will therefore consider Williams' motion on the merits. Section 3582(c)(1)(A) provides that any reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Relevant here, the applicable policy statement, U.S.S.G.§ 1B1.13, provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (1) suffering from a serious physical or medical condition, (2) suffering from a serious functional or cognitive impairment, or (3) experiencing deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, cmt. n.1(D).

With regard to the last consideration relating to "extraordinary and compelling reasons" identified by the Director, BOP has issued a regulation defining its own consideration of compassionate release requests. *See* BOP Program Statement 5050.50.[1] This program statement was amended effective January 17, 2019, following the First Step Act's passage. It sets forth in detail BOP's definition of the circumstances that may support a request for compassionate release, limited to the same bases the Sentencing Commission identified: serious medical condition, advanced age, and family circumstances.[2]

The Court will therefore consider whether Williams' COVID-19-related concerns constitute "extraordinary and compelling reasons" under the compassionate release statute. In his letter, Williams asserts a generalized concern for his life and health, along with a concern that he is being housed in a pod that is under quarantine, which presumably means he is concerned about contracting COVID-19 while incarcerated. Although he states, "I have kids with sickle cell and family I need to stay in contact with due to health issues and the condition that the world is in today," he does not state that he himself is suffering from any serious physical or medical condition, any serious functional or cognitive impairment, or any deteriorating physical or mental health because of the aging process.

Neither the policy statement nor the BOP regulation provides any basis for compassionate release based on general health concerns, including those arising from the COVID-19 pandemic. Rather, the grounds for compassionate release the Commission has identified are all based on inherently individual circumstances—health, age, and family responsibilities—and, nothing

---

[1] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.
[2] The policy statement is binding under the express terms of § 3582(c)(1)(A), and because it concerns only possible sentence reductions, not increases, it is not subject to the rule of *Booker v. United States*, 543 U.S. 220 (2005), that any guideline that increases a sentence must be deemed advisory. *See Dillon v. United States*, 560 U.S. 817, 830 (2010) (making clear that the statutory requirement in § 3582 that a court heed the restrictions stated by the Sentencing Commission is binding).

comparable to the general COVID-19 concerns that thousands of offenders could cite in compassionate release motions.

The Court further notes that district courts within the Fifth Circuit have already denied compassionate release motions by defendants and stated such grounds are insufficient. *See e.g. United States v. Koons*, 2020 WL 1940570, at *5 (W.D. La. Apr. 21, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence."); *United States v. Wright*, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (same); *United States v. Marco Perez-Serrando,* 2020 WL 2754914, at *2 (S.D. Miss. May 27, 2020) ("A generalized fear of contracting COVID-19 does not justify compassionate release."); *United States v. Clark*, 2020 WL 1557397, *4 (M.D.L.A. Apr. 1, 2020) (finding the defendant had failed to present evidence of extraordinary and compelling reasons to modify his prison sentence because he "does not meet any of the criteria set forth by the statute," and he "cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification"). *See also United States v. Alexander*, 2020 WL 2468773, at *7 (M.D. La. May 13, 2020) (citing *Clark*, the fear of contracting a communicable disease does not warrant a sentence modification); *Riggs v. Louisiana*, 2020 WL 1939168, at *2 (W.D. La. Apr. 22, 2020) (prisoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation).

The Third Circuit, in a published opinion which has persuasive authority, has reached the same conclusion. *United States v. Raia*, 954 F.3d 594, 597(3d Cir. 2020) (noting "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release"); *accord*, *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("As defendant does not assert that he is suffering from

a medical condition as defined in U.S.S.G. § 1B1.13, a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A.").

The Government argues that, to classify COVID-19 as an extraordinary and compelling reason supporting compassionate release would not only be inconsistent with the text of the statute and the policy statement, but it would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens; could result in the scattershot treatment of inmates; and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement. According to the Government, Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

After considering the authorities cited above, the Court finds that the generalized Covid-19 related fears expressed by Williams in his letter are not sufficient to establish the extraordinary and compelling reasons necessary to reduce a sentence.

The Court additionally finds that Williams has failed to demonstrate that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" governing pretrial release or detention, or that release comports with the §3553(a) factors. U.S.S.G. § 1B1.13(2); *Watson*, 2020 WL 1890541, at *3 (additionally finding the defendant was not eligible for compassionate release because he poses a danger to the community in light of the offense of conviction (six armed robberies), his lengthy criminal history as set forth in the PSR, and his various disciplinary infractions in prison, which "contradict[ ]his claims that imprisonment has changed him.").

In this case, Williams' original conviction was for possession with intent to distribute methamphetamine. His four failed drug tests while on supervised release, along with his failure to communicate with his probation officer, and moving without permission, confirm his poor performance while on supervision. The concerns regarding community safety are heightened given the precarious nature of the COVID-19 pandemic, and the extra responsibilities being carried by law enforcement as a result.

The Court concludes that, to the extent Williams' letter may be construed as a request for compassionate release, his generalized fear of COVID-19 does not warrant compassionate release.

*Request for home confinement under the CARES Act*

Williams' letter states he is "concerned about" halfway house time and home confinement, which could be interpreted as a request for home confinement. The Director of the Bureau of Prisons ("BOP") may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Under the CARES Act, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. L. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General made such a finding, stating that because of COVID-19, "emergency conditions are materially affecting the functioning" of the BOP, so that the BOP director now has authority to grant home confinement to a larger grouper of prisoners. *See* Attorney General's Apr. 3, 2020, Memorandum to Director, Bureau of Prisons.[3]

Decisions regarding prisoner designations, including release to home confinement, are reserved exclusively to BOP, as they involve specialized determinations uniquely within its

---

[3] Available at: https://www.justice.gov/file/1266661/download

expertise. See 18 U.S.C. § 3621(b) (providing that "[t]he Bureau of Prisons shall designate the place of the prisoner's imprisonment," taking into account his security designation, his programmatic needs, his mental and medical health needs, his faith-based needs, the proximity to his primary residence, BOP's security concerns, and the recommendations of the sentencing court). Courts have no authority to dictate prisoner placements, and BOP's prisoner designations are not subject to judicial review. *Id*. ("The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.... A designation of a place of imprisonment under this subsection is not reviewable by any court"). *See e.g., Siebert v. Chandler*, 586 F. App'x 188, 189 (5th Cir. 2014) ("Moreover, a prisoner has no liberty interest or right to be housed in any particular facility, and the BOP has wide discretion in designating the place of a prisoner's imprisonment."), citing *Olim v. Wakinekona*, 461 U.S. 238, 244–45 (1983) and 18 U.S.C. § 3621(b).

In the light of these statutory provisions, various courts have recognized a district court has no jurisdiction to order home confinement under the CARES Act, as that decision is reserved to BOP. *United States v. Read-Forbes*, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); *United States v. Engleson*, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (same, though noting the district court can make a non-binding recommendation); *United States v. Hembry*, 2020 WL 1821930, *2 (N.D. Cal. Apr. 10, 2020); *United States v. Carter*, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020); *United States v. Garza*, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020).

9

The Court therefore concludes that, to the extent Williams' letter may be construed as a request for home confinement under the CARES Act, the Court is without jurisdiction to grant such a request.

*Conclusion*

For the reasons set forth above,

**IT IS ORDERED** that Williams' Letter/Motion [Doc. No. 16] is **DENIED.**

MONROE, LOUISIANA, this 5th day of June, 2020.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE